OPINION
{¶ 1} Anna Naef appeals from a judgment of Juvenile Court terminating her parental rights with respect to her daughter, Alvina Wiley, and awarding custody of the child to Appellee, Greene County Children's Services Board ("CSB"). Appellant Naef presents three assignments of error on appeal.
Third Assignment of Error
 {¶ 2} "The trial court erred when it failed to appoint independent counsel for the minor children."
 {¶ 3} The underlying proceeding concerned CSB's separate requests for permanent custody of two of Appellant Naef's children, Brittany Moore, born on October 22, 1996, and Alvina Wylie, born on June 8, 2000. Both girls had been in the temporary custody of CSB, residing with the same foster parents. CSB's motion for permanent custody was made pursuant to R.C.2151.353(A).
 {¶ 4} Both requests for permanent custody were the subject of hearings over five days in March, April and May of 2004. On the final day Juanita Reed, a CASA representative whom the court had appointed guardian ad litem for both girls, testified.
 {¶ 5} Reed recommended that CSB be awarded permanent custody of both Brittany and Alvina. She also recommended that they remain together. On cross-examination of Reed, the following colloquy took place:
 {¶ 6} "BY MR. MILLER: (Counsel for CSB).
 {¶ 7} "Q You indicated that you did ask Brittany about her feelings previous to this, thought?
 {¶ 8} "A Yes.
 {¶ 9} "Q What did Brittany tell you?
 {¶ 10} "A They wanted to go home to their mother.
 {¶ 11} "Q Do you think that is in the best interest —
 {¶ 12} "A She was speaking for both her and her sister.
 {¶ 13} "Q Alvinia?
 {¶ 14} "Y Yes.
 {¶ 15} "Q And do you think that's in their best interest to do that?
 {¶ 16} "A No, I do not.
 {¶ 17} "Q In your role as a CASA, do you — are you speaking on behalf of the parents?
 {¶ 18} "A No.
 {¶ 19} "Q What is your role as a CASA exclusive?
 {¶ 20} "A Court appointed child advocate to see, to be the child's voice in Court for their best interest.
 {¶ 21} "Q Okay. Is there a limitation on expressing the children's best interest as they express it to you?
 {¶ 22} "A I suppose not.
 {¶ 23} "Q All right. If a child expressed to you their desire to return to an abusive parent, would you express that to the Court?
 {¶ 24} "A I would express that to the Court even though it's against my recommendation. This is what we would like —
 {¶ 25} "Q So your job —
 {¶ 26} "A — like they —
 {¶ 27} "Q I'm sorry.
 {¶ 28} "A Like Brittany, when I talked to her said she wanted to go back with her mother.
 {¶ 29} "Q That is what Brittany wants?
 {¶ 30} "A Yes.
 {¶ 31} "Q Was it your impression then, and is it your impression now that that would be against her best interest?
 {¶ 32} "A Yes.
 {¶ 33} "MR. MILLER: Thank you. That's all I have.
 REDIRECT EXAMINATION {¶ 34} BY THE COURT:
 {¶ 35} "Q And when was that; when did she indicate that to you?
 {¶ 36} "A I believe it was October. 10-16, so October 16th.
 {¶ 37} "THE COURT: All right. Anything else?
 {¶ 38} "MR. MILES: Yeah, that opened up a can of worms.
 RECROSS EXAMINATION {¶ 39} BY MR. MILES: (Counsel for Anna Naef)
 {¶ 40} "Q She indicated to you on October 16th that shewanted — her speaking on behalf of Alvinia — wanted her to livewith her mother?
 {¶ 41} "A Yes.
 {¶ 42} "Q Did you report that in your CASA report?
 {¶ 43} "A Yes, I did.
 {¶ 44} "Q Okay. And did you ask the Court to have an attorney appointed for Brittany?
 {¶ 45} "A I'm sorry?
 {¶ 46} "Q At that point in time your role as an advocate of CASA Guardian Ad Litem is not conflicted with what the child's wishes were, correct?
 {¶ 47} "A Yes,
 {¶ 48} "MR. MILLER: I'm going to object to that. I don't think that is a proper characterization of law. I think she testified the role of the CASA in a supplemental question to me was that she was supposed to hear the voice of the children, have the wishes expressed, but that she was supposed to take into account also what would be in the best interest of the children, and I set out the example of an abused child to illustrate that point.
 {¶ 49} "THE COURT: Overruled. I'll permit it. Go ahead.
 {¶ 50} "BY MR. MILES:
 {¶ 51} "Q Is it — I guess — I thought there was a question pending.
 {¶ 52} "A Can you repeat it, please.
 {¶ 53} "Q Sure. Do you believe it was, after having that conversation, talking with Brittany that she wanted to live with mother, her and Alvinia live with mother, at that point in time you did not believe it was in the best interest for that to happen, correct?
 {¶ 54} "A Correct.
 {¶ 55} "Q Okay. Now, at that point in time that you believed to be in the best interest of those two children conflicted with the wishes of Brittany, correct?
 {¶ 56} "A Correct.
 {¶ 57} "Q Okay. And did you ask for counsel to be appointed for Brittany?
 {¶ 58} "A It's my understanding that her counsel is the County's counsel, which is the prosecutor.
 {¶ 59} "Q That is how you interpreted that?
 {¶ 60} "A Am I wrong?
 {¶ 61} "Q I'm going to argue something different. But, no, I'm not allowed to get in a dialogue with you. So at that point in time you knew that your role as a Guardian Ad Litem for the child conflicted with the child wishes?
 {¶ 62} "A Yes.
 {¶ 63} "MR. MILES: No further questions.
 {¶ 64} "THE COURT: Ms. Johnson, anything else?" (T. 1074-1078). (Emphasis supplied).
 {¶ 65} Counsel for John Pauley, Brittany's father, then asked the court to appoint counsel for Brittany, citing and relying onIn re Williams, 101 Ohio St. 3d 398, 2004-Ohio-1500. The court took the request under advisement, and subsequently interviewed Brittany in camera. When the court asked with whom she would like to live "or do you even have a feeling about that?" Brittany replied: "I don't (sic) have anything about it right now . . . I don't know." (T. 1093). The court made no inquiries of Brittany concerning her sister Alvina's wishes. Neither did the court interview Alvina.
 {¶ 66} The court did not rule on the motion to appoint counsel for Brittany. However, the issue was rendered moot by the court's subsequent denial of CSB's motion for permanent custody of Brittany. The court did award CSB permanent custody of Alvina, finding that it would be in her best interest, and that she cannot be placed with either Appellant Naef of the child's father within a reasonable time. R.C. 2151.353(A).
 {¶ 67} Appellant Naef argues that, on the record before it, the Juvenile Court erred when it failed to appoint counsel for both minor children; Alvina as well as Brittany. As we noted, denial of CSB's motion for permanent custody of Brittany renders the issue moot as to Brittany. The question is whether the same applies with respect to Alvina.
 {¶ 68} In Williams, the Supreme Court held:
 {¶ 69} "Pursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and Juv.R. 2(Y), a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding, and therefore is entitled to independent counsel in certain circumstances." Id., Syllabus by the Court.
 {¶ 70} The Williams court didn't explain what circumstances might trigger the juvenile court's duty to appoint counsel. Presumably, the Court had reference to the facts that were before it.
 {¶ 71} In Williams, the child whose custody was in issue was four years of age. He had repeatedly expressed a desire to remain with his mother. The guardian ad litem appointed for him recommended that permanent custody be granted to the agency. Therefore, because the child's interests were in conflict with the guardian ad litem's recommendation, the Supreme Court found that the child was entitled to representation by counsel. We note that Williams was before the Supreme Court on a certified conflict, and that in so holding the Court rejected the contrary holding of this court in In re Alfrey, Clark App. No. 01CA0083, 2003-Ohio-608.
 {¶ 72} Both Appellant and Appellee focus on the guardian ad litem failure to request that counsel be appointed for Brittany and Alvina, knowing of their wishes. However, R.C. 2151.352 and Juv.R. 4(A), on which Williams relied, puts the duty to appoint counsel on the court. The question is whether the duty was triggered and, if so, the court fulfilled its duty with respect to Alvina.
 {¶ 73} Alvina was much the same age as the child inWilliams when the matter came before the court. However, unlike the child in Williams, there was no indication that Alvina had repeatedly asked to return to her mother, Appellant Naef. Indeed, there was no evidence of what Alvina's wishes in that regard were, apart from her older sister's statement to the guardian ad litem, which the guardian ad litem understood as indicating the wishes of both girls. Brittany's later statement to the court in her in camera interview disclaiming any preferences in that regard was sufficient to avoid a conflict with the guardian at litem's recommendation that permanent custody of Brittany be awarded to CSB. However, it did nothing to resolve the suggestion that Alvina wished to remain with her mother, which if true, was in conflict with the guardian ad litem's recommendation.
 {¶ 74} Williams was decided only one month before these proceedings, and the motion for appointment of counsel was made very late in the course of them. Further, on its face, the motion concerned the older child only. It is therefore somewhat understandable that the court's efforts to resolve the Williams
issue were limited as they were. However, they failed to resolve the alleged conflict as to Alvina, who per Williams would have been entitled to appointment of counsel had she, upon being interviewed, expressed a desire to remain with her mother. Because that issue was unresolved, the award of permanent custody of Alvina to CSB is flawed and must be reversed. The third assignment of error is sustained.
 {¶ 75} The order from which this appeal was taken will be reversed and the matter will be remanded to the trial court for further proceedings. If the court interviews Alvina and if she indicates no desire concerning custody that conflicts with the guardian ad litem's recommendation, the Juvenile Court is free to again award permanent custody to CSB. In that event, Anna Naef may appeal, raising the issues presented in her first and second assignments of error herein. Because our determination of the third assignment of error has rendered the alleged error moot, for purposes of this appeal, we decline to resolve those assignments on this record. App.R. 12(A)(1)(c)
Brogan, J. and Young, J., concur.
 FINAL ENTRY
Pursuant to the opinion of this court rendered on the ____ day of ____, 2004, the judgment of the trial court is Reversed and the matter is Remanded to the trial court for further proceedings consistent with the opinion. Costs are to be paid as provided in App.R. 24.
Brogan, Judge, Grady, Judge, Young, Judge.