OPINION *Page 2 
{¶ 1} Guardian Ad Litem — appellant appeals the August 15, 2006, judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, which grants permanent custody of Melanie Avon, Gabrail Avon, Kendra Avon and Xander Avon to appellee Tuscarawas County Job Family Services ("TCJFS").
 STATEMENT OF FACTS AND LAW {¶ 2} Penny Howes is the mother of Melanie Avon (DOB 08-04-00), Gabrail Avon (DOB 10-02-01), Kendra Avon (DOB 01-28-03), and Xander Avon (DOB 01-27-05) ("Avon Children"). Frederick Woodard is the father of Melanie and Gabrail.[1] Matthew Avon is the father of Kendra and Xander.[2]
 {¶ 3} On August 11, 2005, the Avon children were voluntarily placed in the custody of TCJFS because the family was evicted from its home and was homeless. On September 7, 2005, TCJFS took emergency custody of the Avon children, and a shelter care hearing was conducted on the same day. The court found that there were reasonable grounds to hold the children in substitute care, and ordered that the children be placed in the temporary custody of TCJFS. The children were placed in foster care, and a case plan was filed with the court by TCJFS. *Page 3 
 {¶ 4} An adjudicatory hearing was held on October 4, 2005, at which time the court found that Penny Howes and Matthew Avon failed to provide the children with a safe home, and found further that the home from which they had been evicted was deplorable and risked the children's health and safety. The court thus found that the children were neglected and dependent children as defined by the Ohio Revised Code, and ordered that it was in the children's best interests to remain in the temporary custody of TCJFS.
 {¶ 5} The Guardian Ad Litem ("GAL") filed a Guardian's Report with the court on November 2, 2005. The GAL reported that despite his efforts to contact the children's parents, he had received no response to his requests for a return telephone call or an interview. The GAL noted that the three oldest Avon children had been removed from Penny Howes multiple times in 2003 and 2004 due to her inability to provide a clean, stable home for the children. The reason for the prior removals was thus very similar to the facts of the within case. Based upon the prior history, and the fact that the parents had not contacted him, the GAL did not recommend returning the children to their parents.
 {¶ 6} A dispositional hearing was held on November 2, 2005. Based upon the GAL's recommendation, and with the consent of the parties, the court ordered that the Avon children remain in the temporary custody of the TCJFS, and that the parties make every effort to comply with the terms of the case plan adopted by the court. The matter was set for review on February 1, 2006.
 {¶ 7} A review hearing was conducted on February 1, 2006. The court heard from all the parties, determined that the parents had done virtually *Page 4 
nothing in compliance with their case plan, found that the current placement of the Avon children was appropriate, and ordered that the children remain in the temporary custody of TCJFS under the current case plan and previous orders of the court.
 {¶ 8} During the pendency of the case, Melanie Nauert, nka Smith, a paternal aunt of the two oldest Avon children, Melanie and Gabrail, came forward and expressed a desire to take in and possibly adopt Melanie and Gabrail. In late January, 2006, a home study was conducted by Wayne County Children Services at the request of TCJFS. Melanie Nauert was living with her fiancé, James Smith. A written report regarding the home study was prepared on February 1, 2006, and filed with the court by TCJFS on February 6, 2006. While the report did not make a recommendation one way or the other regarding placement of Melanie and Gabrail in the Nauert/Smith home, the report did reflect positively on that placement.
 {¶ 9} On February 7, 2006, TCJFS filed a motion to modify prior disposition in which it sought permanent custody of the Avon children based upon the parents' substantial failure to remedy the conditions leading to the removal of the children. Further, TCJFS alleged that the parents had failed to comply in any meaningful way with the terms of the case plan. Finally, TCJFS noted in its motion that while Penny Howes and Matthew Avon regularly visited the children, significant problems were noted during the visits, and the parents were resistant and argumentative with agency personnel in attempting to address the problems. *Page 5 
 {¶ 10} TCJFS acknowledged Melanie Nauert's request for placement of Melanie and Gabrail, but indicated that it preferred the Avon children remain together. Melanie then expressed her desire to take in all four of the Avon children. TCJFS thereafter requested that Wayne County Children Services prepare a supplemental home study in late June, 2006. The supplemental home study opined that while the Smith[3] home could accommodate the addition of two small children, the addition of four small children was not advisable due to the fact that the Smiths' blended family already consisted of five children, three of whom lived with the Smiths full time, one who stayed with the Smiths on weekends, and one who rarely visited the Smiths. This, combined with the fact that the Smiths had been married less than one year and lived in a three to four bedroom home led the Wayne County Children Services case worker to believe that the addition of four small children to the Smith home would be too much for the Smiths to handle. TCJFS concurred in this assessment.
 {¶ 11} On July 5, 2006, the children's mother, Penny Howes, filed a motion to change legal custody to Melanie Smith, and a motion to extend protective supervision for six months. In her motions, Ms. Howes asked the court to extend the date of the permanent custody hearing for six months in order for the parties to fully evaluate Mrs. Smith's suitability as legal guardian of the children. In addition, the GAL filed a supplemental report on July 7, 2006, in which he also advocated a six month extension of time of the permanent custody hearing in order to allow for full exploration of relative placement with Mrs. Smith. *Page 6 
 {¶ 12} A full hearing regarding permanent custody was held on July 13, 2006. The trial court heard testimony from mother Penny Howes, Wendy Azzardi of TCJFS, Beth Bertini of TCJFS, father Matthew Avon, paternal aunt Melanie Smith[4] and her husband James Smith. At the conclusion of the hearing the trial court found that the Avon children could not and should not be placed with either parent within a reasonable time, and further found that it was in the children's best interests to award permanent custody of the children to TCJFS. While neither parent filed an appeal of the trial court's decision regarding permanent custody, the GAL filed an appeal, in which he raises the following assignment of error:
 {¶ 13} "THE TRIAL COURT ABUSED ITS DISCRETION AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FINDING DILIGENT CASE PLANNING SERVICES BY THE APPELLEE AND THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THESE CHILDREN."
 {¶ 14} The GAL agrees that the Avon children should not be returned to their parents, but argues that the trial court should have extended temporary custody for an additional six months in order that a more extensive study of relative placement with Mrs. Smith could be conducted. We disagree.
 {¶ 15} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its *Page 7 
judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, 1982 WL 2911. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 16} R.C. 2151.414(B)(1) states, "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 17} (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. . . ."
 {¶ 18} If the court determines, by clear and convincing evidence, that one or more of a list of sixteen situations exists, which are listed in R.C. 2151.414 (E), then the court shall find that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. The first situation listed in the statute is: *Page 8 
 {¶ 19} "Following the placement of the child outside the home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. . . ."
 {¶ 20} The trial court found that these children cannot and should not be placed with either parent within a reasonable time. The trial court also found that "despite diligent, reasonable efforts and planning" by TCJFS to remedy the problems which caused removal of the children, both parents have failed to substantially remedy those problems.
 {¶ 21} The appellant asserts that TCJFS never used reasonable case planning to assist these children in unification with the Smiths (paternal aunt and her husband). But, we find that reasonable case planning, as used in 2151.414 (E)(1), does not mean reasonable case planning to assist the children. It appears to mean reasonable case planning to assist the parents with their problems.
 {¶ 22} Assuming, arguendo, that reasonable case planning as used in R.C. 2151.414 (E)(1) includes reasonable case planning to assist these children to be unified with Melanie Smith, the paternal aunt of only two of the children, TCJFS acted reasonably. Melanie Smith found out that the children were in an agency's custody when Melanie's mother received an e-mail from the mother of the children. Melanie Smith began trying to find out what county had the *Page 9 
children. The mother had been living in Medina County. Medina County told Melanie to try Wayne County. TCJFS found out Melanie's information from Wayne County and TCJFS then contacted Melanie. This contact between TCJFS and Melanie occurred in December 2005 or January 2006. (Tr. 158) A home study of the Nauert/Smith home was done in February 2006 to assess their home for placement of the two children who are biologically related to her. The initial request of Melanie Nauert and James Smith was to be considered only for the placement of those two children. While it's true that the Smiths only received fifteen minutes of visitation with these children at the end of the parents one hour visitation with the children, this was not unreasonable pending the outcome of the home study. It's important to note that by February of 2006, these four children had been in foster placement with TCJFS continually since August 2005, or about six months. Mother and her husband initially were not in favor of placement with Melanie. They did not want the children to be separated. Mother was also concerned that Melanie would maintain contact with the father of the two oldest children and he had been violent in the past. In addition, mother did not know Melanie's boyfriend, Jim.[5] (Tr. 160)
 {¶ 23} Following the results of the first home study of Melanie and Jim's home, Melanie and Jim changed their minds and wanted to be evaluated for placement of all four children. Because no one wanted to separate these four children, an addendum to the home study was requested and done. Based on the new marriage of Melanie and Jim and based on the number of children *Page 10 
already at the home (Melanie has three and Jim has two, but only one is there and only part of the time), TCJFS could not recommend placement of all four children with Melanie and Jim.
 {¶ 24} It also needs to be noted that the three oldest children had been removed from mother's home in Wayne County from May 7, 2003 to July 2003, and then again from September 22, 2003, to August 2004, before all the children were placed with TCJFS in August of 2005 in the case sub judice. In light of all the circumstances, it was not unreasonable for the TCJFS to proceed slowly with visitation between the children and the Smiths until it was known whether a home study recommended the Smiths for placement of all four children.
 {¶ 25} Appellant also argues that the trial court abused its discretion and ruled against the weight of the evidence in finding that permanent custody was in the best interests of the children. In determining best interests of a child, the court shall consider all relevant factors, including, but not limited to, the following: "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care-givers and out-of-home providers, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; (4) The child's need for a legally secure permanent placement and whether *Page 11 
that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. . . ." R.C. 2151.414 (D). Appellant argues that a legally secure placement can be achieved by placing the children in the legal custody of the Smiths or by at least extending temporary custody in this case in order to see if that would work. (Even Melanie Smith conceded at trial that extended visitations with all the children and all of her family needed to be done prior to placing the children there). (Tr. 236). We do not find that the trial court abused its discretion in finding that it is not in the best interest of these children to be placed in the legal custody of Mr. Mrs. Smith and that it is not in the children's best interest to extend the case for another six months in the hope that this placement might be successful. The trial court was concerned with adding four children, ages one year to five years, to the new marriage and blended family of the Smiths and noted that the children have had little time to get to know Mr. Smith. The trial court summed it up by saying, "The court finds that the risks involved for these children in extending this case in hopes that a new placement will `work out' are too great and unfair to them. While there is always more than one appropriate placement for every child, the time arrives for the court to stop testing possibilities and create immediate permanency in that child's life." See August 15, 2006, Judgment Entry granting permanent custody at pages 3-4.
 {¶ 26} The Ohio Supreme Court, in In re Schaefer, 111 Ohio St.3d 498,857 N.E.2d 532, 2006-Ohio-5513, made it clear that a trial court's statutory *Page 12 
duty, when determining whether it is in the best interest of a child to grant permanent custody to an agency, did not include finding by clear and convincing evidence that no suitable relative was available for placement. "The statute requires a weighing of all relevant factors, and the trial court did that in this case. R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414 (B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." Schaeffer at ¶ 64.
 {¶ 27} The trial court nevertheless considered placement with the Smiths, but found that it was in the children's best interest to create immediate permanency in their lives. We find that the trial court had before it clear and convincing evidence upon which to grant permanent custody to the TCJFS. The trial court did not abuse its discretion in denying the request for an extension of time or in finding that it was in the children's best interest to grant permanent custody to the TCJFS.
 {¶ 28} Accordingly, appellant's sole assignment of error is overruled, and the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.
Edwards, J., Gwin, P.J. and *Page 13 
Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] Mr. Woodard has not been involved in the within case, and failed to appear at the permanent custody hearing despite the fact that he received proper notice of same.
[2] It is unclear why Melanie and Gabrail have Mr. Avon's last name, since Matthew was not married to Penny at the onset of the within case.
[3] Melanie Nauert married James Smith on May 12, 2006.
[4] Mrs. Smith was not represented by counsel, nor did she file a motion with the court on her own behalf seeking legal custody. The trial court nonetheless allowed Mrs. Smith to testify at the permanent custody hearing and make a request on the record for custody of the Avon children.
[5] Melanie and Jim were married on May 12, 2006, and had been married two months on the date of the permanent custody hearing. *Page 1