[Cite as *In re R.P.*, 2011-Ohio-5378.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


IN THE MATTER OF:
R.P. AND I.S., NEGLECTED/DEPENDENT
CHILDREN


      JUDGES:
:   Hon. W. Scott Gwin, P.J.
:   Hon. Julie A. Edwards, J
:   Hon. Patricia A. Delaney, J.
:
::   Case No. 2011AP050024
:
:
:   O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil appeal from the Tuscarawas County Court of Common Pleas, Case No. 10JN00138 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | October 14, 2011 |


APPEARANCES:

For-Mother

SHARON BUCKLEY-MIRHAIDARI
152 N. Broadway Ave., Ste. 101
New Philadlephia, OH 44663

For Father

JOHN GARTRELL, JR.
153 N. Broadway
New Philadelphia, OH 44663

For Job & Family Services
JEFF KIGGANS
389 16th Street S.W.
New Philadelphia, OH 44663

Guardian Ad Litem
KAREN DUMMERMUTH
Box 494
New Philadelphia, OH 44663

For Maternal Grandmother
MICHAEL JOHNSON
117 South Broadway
New Philadelphia, OH 44663

For Paternal Grandparents
SHAWN LINDSAY
Box 272
Uhrichsville, OH 44683

*Gwin, P.J.*

{¶ 1}   Appellant-father R.P. III[1] appeals the April 26, 2011, judgment entry of the Tuscarawas County Court of Common Pleas, Juvenile Court Division, which terminated his parental rights with respect to his minor child, R.P. and his step-child I.S. and granted permanent custody of the children to appellee, Tuscarawas County Job & Family Services (hereinafter "TCJFS").

## I. PROCEDURAL HISTORY

{¶ 2}   Appellant R.P. III is the biological father of R.P.[2] [b. 2/15/04].[3] On March 29, 2010, TCJFS filed a complaint alleging the minor children, R.P. age six and I.S. age eight were neglected and dependent.   An adjudicatory hearing was held on May 25, 2010.   The trial court found the children to be dependent and neglected. By agreement of the parties the case proceeded to immediate disposition.   The parents agreed to the services set forth in the case plan and the court adopted the case plan for reunification with the parents.   The children had remained in the custody of their parents since the filing of the complaint. The trial court ordered their removal at the conclusion of the dispositional hearing. The paternal grandparents, Mr. and Mrs. P. requested a home study, but the court denied the same at the dispositional hearing.

{¶ 3}   The case was set for review hearing on August 30, 2010 and for annual review on March 21, 2011.   The parents attended all hearings and participated in case plan services.

---

[1] For purposes of anonymity, initials designate appellant's name only. See, e.g., *In re C.C.,* Franklin App. No. 07-AP-993, 2008-Ohio-2803 at ¶ 1, n.1.
[2] The biological mother of R.P., J.S. has filed a separate appeal See, Tuscarawas App. No. 2011 AP 05 0023.
[3] B.W. the biological father of I.S. (b. 4/18/01) did not appear or participate in any court proceedings.

{¶ 4}   The paternal grandparents, Mr. and Mrs. P. filed a motion to intervene, a motion for legal custody and temporary custody and a motion for a home study on February 14, 2011. The trial court overruled the grandparents' motion.

{¶ 5}   On February 18, 2011, TCJFS filed a motion for permanent custody.  The permanent custody hearing was held on April 7 and April 14, 2011 at the same time as the permanent custody hearing of R.P. and I.S.'s newborn brother R.E.P.  The trial court awarded TCJFS permanent custody of all three children.

{¶ 6}   The concerns presented were that the parents in the home, mother J.S. and father R.P. were not following through with the recommendations of TCJFS in a recently-closed diversion case.  The parents would make improvements while TCJFS was involved with hygiene, supervision, etc., but as soon as TCJFS was no longer involved the situation devolved again to one of neglect.

{¶ 7}   A case plan was filed for the parents with the goal of reunification.  Worker Jaime Grunder testified that the plan did not require the parents to complete services that were very recently completed by mother and/or father, such as parenting classes.

{¶ 8}   The children were placed in a foster home with the Village Network.  The worker assigned to the children was Ms. Brandi Ankrom.  Ms. Ankrom also is the counselor for R.P.  The counselor for I.S. through the Village Network is Ms. Judy McGill.  She already had a relationship with both R.P. and I.S. due to her position as the school social worker at New Philadelphia City Schools.  The children were attending New Philadelphia Schools while in the home of the parents.

{¶ 9}   When the schedule of the children's counseling was changed in late August 2010 due to scheduling reasons to directly follow the visits between the children

and their parents, the counseling sessions for both I.S. and R.P. deteriorated dramatically. The visits were suspended for a brief trial period in October per the agreement of the parties. The visits were suspended indefinitely by the Court in February 2011 in an attempt to see if the visits were the reasons that the children had become out of control. The behaviors of the children improved dramatically according to all the professionals involved during the times when the visitation schedule was suspended.

{¶ 10} R.P. stated to Ms. Ankrom that he would get his "ass beat" in the home of his parents regarding his toileting accidents. I.S. also told his counselor Ms. McGill that he saw R.P. getting hit with a belt in reference to toileting issues. Ms. McGill testified that this physical retribution for toileting accidents made toileting issues worse for R.P.

{¶ 11} While the case was progressing with R.P. and I.S., Mother gave birth to R.E.P. on February 8, 2011.

{¶ 12} Ms. Grunder testified that mother continued to deny that she was pregnant and did not begin to receive prenatal care until December for her child that was born in February.

{¶ 13} Ms. Grunder further testified both parents completed their case plan objectives in this case. Ms. Grunder testified that the parents contacted Developmental Disability services but they were not eligible for services because they did not have mental health issues. Dr. Exley also recommended case management services for the parents. Ms. Grunder testified that mother did everything within her power to try and get case management services. The agency contacted CMH Southeast and MRDD now known as DD and when these 2 agencies reported parents were not eligible for

services, the agency did nothing further to obtain case management services for the parents.

{¶ 14} The maternal grandmother, M. B. and her husband also offered to assist in case management services, but were denied.

{¶ 15} Judy McGill (I.S.'s counselor), Julie McFarland (R.P.'s personal one-on one school aide) and Brandi Ankrom (Village Network Assistant Coordinator and R.P.'s individual therapist) all testified that R.P.'s toileting issues of defecating and urinating in his pants have continued even though he has been in foster care for almost a year.

{¶ 16} Ms. McGill testified that she was aware of two accidents with R. P. since his visits with his parents were suspended and she was also aware of accidents occurring at the Village Network during counseling sessions. One of the accidents occurred when R.P. was sick with diarrhea and the other when he had a tooth pulled and was on antibiotics.

{¶ 17} Ms. McGill initially had contact with the older child I. S. through her position at New Philadelphia in the fall of 2007.  At this time, he was in the care of his parents.  Ms. McGill testified that "his behavior was very aggressive, he, his hygiene, um, very disheveled, he was often dirty, had a strong body odor".  Someone had to intervene with I.S. because of his behaviors in the classroom every day.

{¶ 18} R.P.'s one-on-one personal school aide, Julie McFarland testified that she has been R.P.'s aide since January 2011 and that prior to January 2011, R. P. never had a one-on-one personal school aide. Ms. McFarland testified that when she first started working with R.P. in January 4, 2011 she had to remove him from the classroom every day.  As of the date of trial Ms. McFarland still had to remove him from the

classroom two to three times a week. R. P. is still soiling his pants during the 3 ½ months that she has been his personal aide and he still wears pull ups to school every day and wears them all day long. Ms. McFarland has also had to send R.P. home to the foster parents to clean him up for a soiling accident because it was a mess that needed more attention than just wipes at the school.

{¶ 19} Ms. McGill worked again with I. S. and R. P. in her position as a counselor at The Village Network. Ms. McGill testified that during the summer of 2010, her counseling sessions went fairly well. However, she further testified that once her sessions with the children directly followed the visitation the children had with their parents, the situation drastically changed. Ms. McGill testified that the behavior of the child deteriorated to a degree to which she only attempted to manage his behaviors, and there was very little counseling happening during those sessions.

{¶ 20} It came to a point in October 2010 where Ms. McGill and Ms. Brandi Ankrom, the counselor for R.P., asked TCJFS what could be done. It was decided, with the approval of the parents, that the visits between the children and their parents would be stopped for a two-week period to determine if any difference could be noted in the children. There was indeed an improvement for that short time. However, when visits were re-started, the problems restarted.

{¶ 21} Maternal grandmother Ms. B. testified that prior to the current case being filed, she was unaware that the children were having difficulty in school even though they were having contact with the children. She further referred to her daughter J.S. as a "good mom," and that they got good physical care from their parents.

{¶ 22} Paternal grandmother Ms. T. P. stated that she did not have any concerns about the children's mother and her son's ability to parent the children.

{¶ 23} Ms. Grunder testified that she did not think that either set of grandparents would protect the children from their parents.

{¶ 24} By an entry filed April 26, 2011, the court granted TCJFS' request for a permanent commitment of R.P. and I.S. to the agency.

{¶ 25} It is from this entry that the appellant-father has appealed.

## III. ASSIGNMENT OF ERROR

{¶ 26} On appeal, appellant-father asserts the following assignment of error:

{¶ 27} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES AS JOB AND FAMILY SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILD COULD NOT BE PLACED WITH FATHER AND MOTHER IN A REASONABLE AMOUNT OF TIME, AND THAT AN AWARD OF PERMANENT CUSTODY WAS IN THE CHILDREN'S BEST INTEREST."

### A. Burden of Proof

{¶ 28} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, quoting *Stanley v. Illinois* (1972), 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551. A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45.

Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.

{¶ 29} An award of permanent custody must be based upon clear and convincing evidence, R.C. 2151.414(B) (1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23.

## B. Standard of Review

{¶ 30} Even under the clear and convincing standard, our review is deferential. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *In re Myers III*, Athens App. No. 03CA23, 2004-Ohio-657, ¶ 7, citing *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. The credibility of witnesses and weight of the evidence are issues primarily for the trial court, as the trier of fact. *In re Ohler*, Hocking App. No. 04CA8, 2005-Ohio-1583, ¶ 15, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.

## IV. Requirements for Permanent Custody Awards

{¶ 31} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court

must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶ 32} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned and the parents cannot be located; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶ 33} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B) (1) (a) through (d) is present before proceeding to a determination regarding the best interest of the child.

A. Parental Placement within a Reasonable Time-R.C. 2151.414(B) (1) (a).

{¶ 34} The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a

finding under R.C. 2151.414(E) (1) – (15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See *In re: William S.*, 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738; *In re: Hurlow* (Sept. 21, 1998), Gallia App. No. 98 CA 6, 1997 WL 701328; *In re: Butcher* (Apr. 10, 1991), Athens App. No. 1470, 1991 WL 62145.

{¶ 35} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

{¶ 36} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

{¶ 37} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist

the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

{¶ 38} "***

{¶ 39} "(16) Any other factor the court considers relevant."

{¶ 40} R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E) (7) to (11) apply.

{¶ 41} In this case, the trial court made its permanent custody findings pursuant to R.C. 2151.414(B) (1) (a). The trial court found that the evidence established that R.P. and I.S. could not be placed with appellant-father within a reasonable period and should not be placed with him.

{¶ 42} Appellant-father argues that he demonstrated ongoing, good-faith compliance with case plan services and TCJFS recommendations throughout the pendency of this case. He contends in his sole Assignment of Error that TCJFS did not

make diligent efforts throughout the pendency of this action to reunify appellant-father with R.P. and I.S.

{¶ 43} The Supreme Court of Ohio in *In re C.F.* (2007), 113 Ohio St.3d 73, 78, 862 N.E.2d 816, 821, noted

{¶ 44} "[N]o one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.' R.C. 2151.01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit. For example, R.C. 2151.412 requires the agency to prepare and maintain a case plan for children in temporary custody with the goal 'to eliminate with all due speed the need for the out-of-home placement so that the child can safely return home.' Under R.C. 2151.413(D)(3)(b), an agency may not file for permanent custody under R.C. 2151.413(D)--the '12 months out of 22 rule'--'[i]f reasonable efforts to return the child to the child's home are required under section 2151.419' and the agency has not provided the services required by the case plan." Id.

{¶ 45} "By its terms, R.C. 2151.419 applies only at hearings held pursuant to R.C. 2151.28, 2151.31(E), 2151.314, 2151.33, or 2151.353. * * * These sections involve adjudication, emergency detention, and temporary-dispositional hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state. The statute makes no reference to a hearing on a motion for permanent custody. Therefore, '[b]y its plain

terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414.' "*In re C.F.,* 113 Ohio St.3d 73, 81, 2007-Ohio-1104, 862 N.E.2d 816, citing *In re A.C.,* Clermont App. No. CA2004-05-041, 2004-Ohio-5531.

{¶ 46} Pursuant to R.C. 2151.414(E) (1), a child may be permanently placed with the agency when, notwithstanding reasonable case planning and diligent efforts by the agency, the parent or parents fail to remedy the problems that caused the removal of the child. A "reasonable effort" is " * * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver* (1992), 79 Ohio App.3d 59, 63, 606 N.E.2d 1011.

{¶ 47} When a trial court is considering whether the agency made reasonable efforts to prevent the removal, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. *In re Brewer* (Feb. 12, 1996), Belmont App. No. 94-B-28. "In determining whether reasonable efforts were made, the child's health and safety shall be paramount." R.C. 2151.419(A)(1).

{¶ 48} However, the record reflects that the trial court made reasonable-efforts findings when the children were committed to the emergency custody of the agency and when they were adjudicated neglected and committed to the temporary custody of the agency after the adjudication hearings. (See, Judgment Entry Filed March 10, 2011, Case No. 11 JN 00088; Judgment Entry filed June 1, 2010, Case No. 10 JN 00183).

{¶ 49} The trial court decided that there was clear and convincing evidence that following the placement of the children outside of the home and notwithstanding

reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the children to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home. R.C. 2151.414(E)(1).

{¶ 50} In this case, the trial court made its permanent custody findings pursuant to R.C. 2151.414(B) (1) (a). The trial court found that the evidence established that R.P. and I.S. could not be placed with appellant-father within a reasonable period and should not be placed with him.

{¶ 51} As set forth in our Statement of Facts, supra, the trial court's findings are based upon competent credible evidence. The record includes testimony of the witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses.

{¶ 52} The evidence demonstrated the successful efforts appellant-father had made in the case to regain custody of his children. On that point, the evidence demonstrates that any improvement the appellant-father has made in her life is tentative and, perhaps, temporary, and that he is at risk of relapse. The trial court found that, regardless of appellant's compliance with aspects of his case plan, he was still not able to be a successful parent to R.P. and I.S.

{¶ 53} In the case of *In re: Summerfield*, Stark App. No. 2005CA00139, 2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

{¶ 54} Further, substantial compliance with a case plan, in and of itself, does not prove that a grant of permanent custody to an agency is erroneous. *In re Watkins v. Harris* (Aug. 30, 1995), 9th Dist. No. 17068, at 9. The dispositive issue is not whether the parent has substantially complied with the case plan, but rather, whether the parent has substantially remedied the conditions that caused the child's removal. See, *e.g., In re McKenzie* (Oct. 18, 1995), 9th Dist. No. 95CA0015, at 7-8; *In re Pittman*, Summit App. No. 20894, 2002-Ohio-2208 at ¶ 60.

{¶ 55} Based upon the foregoing, as well as the entire record in this case, the Court properly found R.P. and I.S. could not or should not be returned to the appellant-father within a reasonable time. Despite offering numerous services, the appellant-father was unable to mitigate the concerns that led to the children's removal.

## B. The Best Interest of the Child.

{¶ 56} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶ 57} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a

grant of permanent custody would have upon the parents. *In re: Awkal* (1994), 95 Ohio App.3d 309, 315. A finding that it is in the best interest of a child to terminate the parental rights of one parent is not dependent upon the court making a similar finding with respect to the other parent. The trial court would necessarily make a separate determination concerning the best interest of the child with respect to the rights of the mother and the rights of the father.

{¶ 58} The trial court made findings of fact regarding the child's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re: Mauzy Children (*Nov. 13, 2000), Stark App. No. 2000CA00244, quoting In re Awkal (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.

{¶ 59} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758.* "A fundamental premise of our criminal trial system is that 'the jury is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S.

76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267. Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record. *Trickey v. Trickey* [1952], 158 Ohio St. 9, 13-14,106 N.E.2d 772, 774; *Bechtol v. Bechtol* (1990) 49 Ohio St.3d 21, 21, 550 N.E.2d 178, 179.

{¶ 60} In the case at bar, the judgment entry granting permanent custody specifically included a statement that the trial court had considered all the factors listed in R.C. 2151.414. "The fact that the trial court did not specifically mention each of the factors listed in R.C. §2151.414(D) does not mean that the trial court did not consider such factors." *In re Schupbach Children* (July 6, 2000), Tuscarawas App. 2000 AP 010005.

{¶ 61} The guardian ad litem also indicated that it was in the children's best interest to be placed in the permanent custody of TCJFS.

### 1). Relative Placement.

{¶ 62} The child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 324, 574 N.E.2d 1055. Accordingly, a court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. *In re A.C.*, 12th Dist. No. CA 2006-12-105, 2007-Ohio-3350 at ¶17; *In re Turner*, 5th Dist. No. 2006CA00062, 2006-

Ohio-4906 at ¶ 35; *In re Perry*, 4th Dist. Nos. 06 CA 648, 06 CA 649, 2006-Ohio-6128 at ¶62.

{¶ 63} During the permanent custody hearing, the court received testimony concerning the relative placement. TCJFS Worker Jaime Grunder testified to the long history that maternal grandmother Ms. B. has with TCJFS. This included more than one substantiated abuse and a substantiated neglect. Ms. Grunder stated that while these incidences are now nearly twenty years old, they are still relevant because "these were children that she raised and these things happened when they were in her care." (Id.)

{¶ 64} Ms. B. testified that prior to the current case being filed, she was unaware that the children were having difficulty in school even though they were having contact with the children. She further referred to her daughter J. S. as a "good mom," and that they got good physical care from their parents. However, the trial court found that based upon her entire testimony Ms. B. did in fact know about many of the instances of issues concerning the children as they occurred.

{¶ 65} Paternal grandmother Ms. T. P. stated that she did not have any concerns about J. S. and her son's ability to parent the children. Case Worker Grunder also testified that in her opinion Mr. and Mrs. P. had little insight about what the concerns were regarding the children. The trial court found that the couple was aware of the filthy living conditions with animal feces and roaches and they did nothing to actively intervene.

{¶ 66} The willingness of a relative to care for the child does not alter what a court considers in determining permanent custody. *In re Patterson* (1999), 134 Ohio App.3d 119, 129-130, 730 N.E.2d 439, 446-447. (Citing *In re Mastin* (Dec. 17, 1997),

Lorain App. Nos. 97CA006743 and 97CA006746 at 7). The child being placed in a permanent situation that fosters growth, stability, and security serves the child's best interests. *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 324, 574 N.E.2d 1055. Accordingly, a court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. *In re A.C.,* 12th Dist. No. CA 2006-12-105, 2007-Ohio-3350 at ¶ 17; *In Re Dylan B., Luna B,* Stark App. No.2007-CA-00362, 2008-Ohio-2283 at ¶ 66; *In re Turner,* 5th Dist. No.2006CA00062, 2006-Ohio-4906 at ¶ 35; *In re Perry,* 4th Dist. Nos. 06 CA 648, 06 CA 649, 2006-Ohio-6128 at ¶ 62.

{¶ 67} The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. *In re Schafer,* 11 Ohio St.3d 498, 2006-Ohio-5513 at ¶ 56. *Schafer* made it clear that a trial court's statutory duty, when determining whether it is in the best interest of a child to grant permanent custody to an agency, did not include finding by clear and convincing evidence that no suitable relative was available for placement. "The statute requires a weighing of all relevant factors, and the trial court did that in this case. R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Schaeffer* at 111 Ohio St.3d, 498, 857 N.E.2d 532, 2006-Ohio-5513, at ¶ 64; *In Re Dylan B., Luna B,* supra at ¶ 67; *In re Avon,* 5th Dist. No.2006-AP-09-0051, 2007-Ohio-1431 at ¶ 26.

{¶ 68} Based on the evidence submitted at trial, the court properly determined the best interest of R.P. and I.S. would be served by the grant of permanent custody to TCJFS rather than to be placed with either the maternal or paternal grandparents. There was sufficient evidence submitted at the hearing to call into question, the relatives' ability to provide a long term, stable placement for the children.

## V. Conclusion

{¶ 69} For these reasons, we find that the trial court's determination that appellant-father had failed to remedy the issues that caused the initial removal and therefore R.P. and I.S. could not be placed with him within a reasonable time or should not be placed with him was not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to TCJFS was in R.P. and I.S.'s best interest was not against the manifest weight or sufficiency of the evidence.

{¶ 70} Appellant's sole assignment of error is overruled.

{¶ 71} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Court Division is affirmed.

By Gwin, P.J.,

Edwards, J., and

Delaney, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. JULIE A. EDWARDS

_____

HON. PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF:
R.P. AND I.S.,
NEGLECTED/DEPENDENT
CHILDREN                                          :
                                                  :
                                                  :
                                                  :
                                                  :
                                                  :
                                                  :         JUDGMENT ENTRY
                                                  :
                                                  :
                                                  :
                                                  :         CASE NO. 2011AP050024


    For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Tuscarawas County Court of Common Pleas, Juvenile Court Division is affirmed.

Costs to appellant.


                                        _____
                                        HON. W. SCOTT GWIN


                                        _____
                                        HON. JULIE A. EDWARDS


                                        _____
                                        HON. PATRICIA A. DELANEY