OPINION
{¶ 1} Appellant, grandparents, Joan and Allen Lovekin, filed this appeal from the judgment entered in the Stark County Court of Common Pleas, Juvenile Court Division, which terminated all parental rights, privileges and responsibilities of the parents, Shanti and William Turner with regard to Appellants' minor grandchildren, Aspen Turner, Mikhail Turner, and Frazier Turner, and ordered that permanent custody of the minor children be granted to the Stark County Department of Job and Family Services (hereinafter "the Department").
 {¶ 2} This appeal is expedited, and is being considered pursuant to App.R.11.2(C). The relevant facts leading to this appeal are as follows:
 STATEMENT OF THE FACTS AND CASE {¶ 3} This appeal pertains to the disposition of permanent custody of Aspen Turner whose date of birth is August 16, 1992, Mikhail Turner whose date of birth is August 9, 1994, and Frazier Turner whose date of birth is May 11, 2000. William Turner is the natural father of the children and Shanti Turner is the natural mother of the children. Appellants Joan and Allen Lovekin are the maternal grandparents of the minor children.
 {¶ 4} On October 12, 2004, the Department filed a complaint alleging that the children were dependent, neglected and abused, and requested temporary custody. In the complaint, the Department stated that the family had been involved in services on a "non-court" basis since June of 2004. The facts which gave rise to the filing of the Complaint and removal of the children involved the following ongoing concerns: Aspen's sexually acting out behaviors and allegations of sexual abuse; the severe behavioral and emotional problems of the children; the parents' mental health issues; and, the parents' inability to consistently and seriously address the children's special emotional and mental health needs.
 {¶ 5} On October 12, 2004, the trial court conducted an emergency shelter care hearing and ordered the children into the Department's temporary custody.
 {¶ 6} On January 5, 2005, at the adjudicatory hearing, upon motion by the Department, the trial court dismissed the abuse and neglect allegations. Thereafter, Shanti and William Turner voluntarily stipulated to a finding of dependency. After the stipulations were accepted, the trial court found the children to be dependent pursuant to R.C. § 2151.04, and further ordered the children to remain in the temporary custody of the Department. Case plans were approved and adopted for both parents.
 {¶ 7} On September 8, 2005, the Department filed a motion for permanent custody of the children. In the motion for permanent custody, the Department alleged that the parents had repeatedly failed to remedy the concerns which led to the removal of the children and that the children could not be placed with either parent within a reasonable period of time. Specifically, the complaint alleged that although the parents complied with the case plan, the initial concerns had not been remedied. It appears that the parents had repeatedly failed to adequately address serious mental health and substance abuse issues. This failure created a chaotic and highly sexualized household environment and resulted in ongoing extreme emotional distress being suffered by the children.
 {¶ 8} On November 21, 2005, Appellant-grandparents, Joan and Allen Lovekin, sent written correspondence to the trial court which was filed and made a part of the record. In the correspondence, Appellants asked for legal custody of the children and requested an interstate home study.
 {¶ 9} On November 22, 2005, after being advised of their rights, Shanti and William Turner voluntarily stipulated to the grant of permanent custody.
 {¶ 10} On December 28, 2005, the Appellant-grandparents, Joan and Allen Lovekin, filed a pro se "Praecipe for Transcripts" and correspondence in which they requested "permanent placement/legal custody" of their three grandchildren. In the attached correspondence, the Appellant-grandparents stated that they believed the two boys needed to be together. They further indicated that the Department's concerns regarding sexual allegations were either "untrue or disoriented." Appellants, who are residents of New Jersey, were subsequently contacted by the Department to begin an interstate home study. The home study was in its initial stages at the time of the best-interest phase of the children's permanent custody hearing.
 {¶ 11} On January 4, 2006, the trial court heard the best-interest phase of the permanent custody hearing. The grandparent-Appellants were present at the best-interest hearing and were permitted to make unsworn statements regarding their interest in placement of the children.
 {¶ 12} At the hearing, the caseworker testified that Aspen was placed in a residential treatment center where she was undergoing treatment for severe emotional and psychological problems including Post Traumatic Stress Disorder (PTSD), Oppositional Defiant Disorder (ODD), Childhood Depressive Disorder, Attention Deficit Hyperactivity Disorder (ADHD), early onset Childhood Bipolar, Sensory Integration Disorder, Borderline Traits and anxiety. The caseworker stated that Aspen struggles academically as well as with the emotional trauma associated with severe sexual abuse. She stated that Aspen is engaged in numerous ongoing services including: psychiatric services for medication, individual therapy, a special counseling therapy group, and peer counseling.
 {¶ 13} The caseworker testified that Mikhail is also in residential placement as a result of psychological and behavioral issues. She stated that Mikhail's issues include early onset bipolar, Oppositional Defiant Disorder (ODD), Attention Deficit Hyperactivity Disorder (ADHD), Post Traumatic Stress Disorder (PTSD), Sensory Integration, depression and possible Asperger's syndrome. She stated that Mikhail struggles in school due to severe behavioral problems and it was anticipated that he may have special classroom needs. She also testified that Mikhail is engaged in special ongoing services including individual counseling, group counseling, and medical services for psychiatric medications.
 {¶ 14} The caseworker testified that Frazier is in foster placement. She stated that Frazier suffers from Attention Deficit Hyperactivity Disorder (ADHD), Post Traumatic Stress Disorder (PTSD), and a mood disorder. The caseworker reported that Frazier was doing well in a school setting and had made great improvements in foster care.
 {¶ 15} Finally, the caseworker testified that the children's individual counselors recommended against placing the children together due to their sexual acting behaviors and reactiveness when they are placed together.
 {¶ 16} In a written report, amended at the time of the hearing, the Guardian Ad Litem stated that a grant of permanent custody to the Department was in the children's best interest.
 {¶ 17} At the hearing, in an unsworn statement, Appellant Joan Lovekin again asked the trial court to order that the children be placed in their custody. Ms. Lovekin told the trial court that she believed the two boys should be together in the same home. In response to therapeutic concerns, Ms. Lovekin stated that the boys get along with each other fairly well and that "[t]his sort of behavior occurs in families without any lasting ill effects". She further stated that she believed the sexual allegations presented by the Department were "unfounded". She continued by stating, "We wonder if the boys ever made these statements, and if they did, were they asking leading questions or pressured them into saying these things". With regard to Aspen, Ms. Lovekin conceded that Aspen should remain in residential placement stating "it would be an injustice for us to ask the Court to remove her from this facility now".
 {¶ 18} After hearing the evidence, the trial court took the matter under advisement.
 {¶ 19} On February 1, 2006, via judgment entry, the trial court granted permanent custody of Aspen Turner, Mikhail Turner, and Frazier Turner to the Stark County Department of Job and Family Services.
 {¶ 20} It is from this decision that Appellant-grandparents, Joan and Allen Lovekin appeal, assigning the following errors for review:
ASSIGNMENTS OF ERROR
 {¶ 21} I. "THE LOWER COURT COMMITTED REVERSIBLE ERROR WHEN IT DID NOT INSURE THAT STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES CHILDREN PROTECTIVE SERVICES DIVISION FOLLOW FEDERAL MANDATES FOR KINSHIP CARE AND O.R.C. 2151.412(G)(5) AND O.A.C. 5101:024-2 B.
 {¶ 22} II. "THE LOWER COURT COMMITTED REVERSIBLE ERROR WHEN IT DID NOT ADDRESS AND RULE IN FAVOR OF THE PARENTS' WRITTEN REQUEST FOR TRANSFEREE OF CUSTODY TO THE MATERNAL GRANDPARENTS DUE TO MENTAL DEFECT OF THE PARENTS. O.R.C. 2151.412.
 {¶ 23} III. "THE LOWER COURT COMMITTED REVERSIBLE ERROR WHEN IT DID NOT WHEN IT DID NOT [SIC] HEAR THE APPELLANTS MOTION FOR CHANGE OF LEGAL CUSTODY. 14th AMENDMENT SEC. 1 UNITED STATES CONSTITUTION DUE PROCESS OF LAW.
 {¶ 24} IV. "THE LOWER COURT COMMITTED REVERSIBLE ERROR WHEN IT DID NOT WHEN IT [SIC] ISSUED A DECISION AND ISSUED AN ORDER GRANTING PERMANENT CUSTODY BASED ON THE PARENTS' STIPULATION WITH OUT [SIC] WAITING ON THE OUTCOME OF THE STARK COUNTY DEPARTMENT OF JOBS AND FAMILY SERVICES INTERSTATE STATE COMPACT AND THE HOME STUDY ON APPELLANTS. O.R.C. 2151.412."
 {¶ 25} Initially we note that the Appellee has moved to dismiss the appeal arguing that the grandparents lack standing. However, it appears that the trial court permitted some, albeit minimal, participation by the grandparents. Assuming arguendo that the grandparents have standing to pursue this appeal we find that their argument lacks merit.
 {¶ 26} Furthermore, since the issues in Appellant's assignments of error overlap, the Court will review Appellant's assignments of error together. The Court finds that essentially, Appellant-grandparent's argue, that the trial court abused its discretion by failing to consider relative placement prior to finding that a grant of permanent custody to the Department was in the best interest of the children.
 {¶ 27} There are two ways that an authorized agency may seek to obtain permanent custody of a child under Ohio law. The agency may first obtain temporary custody and then subsequently file a motion for permanent custody, or the agency may request permanent custody as part of its original abuse, neglect, or dependency complaint. See R.C. § 2151.413, R.C. § 2151.27(C), and §2151.353(A)(4). In this case, the Department filed a motion seeking permanent custody pursuant to R.C. § 2151.413 and held a permanent custody hearing pursuant to R.C. § 2151.414.
 {¶ 28} R.C. § 2151.414(B)(1)(a) permits the grant of permanent custody when the child is not abandoned or orphaned or has not been in the temporary custody of one or more public service agencies or private child placing agencies for twelve or more months of a consecutive month period on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents and further determines that the permanent commitment is in the best interest of the child pursuant to R.C. § 2151.414(D).
 {¶ 29} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. §2151.414(D). These factors are as follows:
 {¶ 30} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 31} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 32} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ending on or after March 18, 1999;
 {¶ 33} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 34} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 35} A court considering a permanent custody motion in a dispositional hearing possesses discretion to award legal custody to either parent or to another person who files a proper motion requesting legal custody. See R.C. § 2151.353(A)(3); In reKeaton, Ross App. No. 04CA2785, 2004-Ohio-6210; In re Dyal,
Hocking App. No. 01CA11, 2001-Ohio-2383; In re Patterson
(1999), 134 Ohio App. 3d 119, 730 N.E.2d 439. A juvenile court is not required to consider relative placement before granting the motion for permanent custody. Nor must the court find, by clear and convincing evidence, that a relative is an unsuitable placement option prior to granting the permanent custody request.In re Keaton; In re Dyal, supra. Relatives seeking the placement of the child are not afforded the same presumptive rights that a natural parent receives as a matter of law. Id.;In re Davis (Oct. 12, 2000), Cuyahoga App. No. 77124.
 {¶ 36} The willingness of a relative to care for a child does not alter the statutory factors to be considered in granting permanent custody. In re Keaton; In re Dyal; In re Jefferson
(Oct. 25, 2000), Summit App. No. 20092. The child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. In reAdoption of Ridenour (1991), 61 Ohio St.3d 319, 324,574 N.E.2d 1055. Accordingly, a court is not required to favor a relative if, after considering all the factors; it is in the child's best interest for the agency to be granted permanent custody. In reKeaton; In re P.P., Montgomery App. No. 19582, 2003-Ohio-1051.
 {¶ 37} Furthermore, courts have recognized that: "`* * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent or other relative] an opportunity to prove [their] suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent or other relative]. * * * The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm.'" In re Bishop (1987),36 Ohio App.3d 123, 126, 521 N.E.2d 838 quoting, In re East (1972),32 Ohio Misc. 65, 69, 288 N.E.2d 343, 346).
 {¶ 38} The trial court is vested with discretion to determine what placement option is in the child's best interest, and the court's exercise of that discretion should be accorded the utmost respect. In re Keaton; In re Dyal; In re Patterson, supra. See, e.g., Davis v. Flickinger (1997), 77 Ohio St.3d 415. Therefore, an appellate court will not overturn a trial court's custody decision unless the trial court has acted in a manner that can be characterized as arbitrary, unreasonable or capricious. In reDyal, supra, citing Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 39} In this case, the parents stipulated to a grant of permanent custody to the agency. The grandparents appeared at the best-interest phase but failed to file a formal motion for custody. After the presentation of evidence, the trial court held that a grant of permanent custody to the Department was in the children's best interest. Appellants contend that the trial court abused its discretion. We disagree.
 {¶ 40} Although some factors may have supported placing the children in the Appellant's legal custody, other factors show that awarding permanent custody to the Department would better serve the children's best interests.
 {¶ 41} The caseworker testified that the children have severe emotional and psychological problems which are currently being successfully addressed by the agency. She further testified that the children had shown improvement in their placements. The Guardian Ad Litem stated that a grant of permanent custody to the Department was in the children's best interest. Finally, the unsworn statement of the Appellants gave the Court reason to believe that the Appellants were reluctant to acknowledge the children's need to be placed in different home environments and their need for ongoing services for emotional trauma.
 {¶ 42} For these reasons the Court finds that the trial court was not required to consider placing the children with the Appellants before it could grant permanent custody to the Stark County Department of Job and Family Services and the trial court did not abuse its discretion in finding that the best interests of the children would be served by granting permanent custody to the Stark County Department of Job and Family Services.
 {¶ 43} We find the evidence to be substantial and credible that it is in the children's best interest to be provided with a safe and stable environment, which can only be available through a grant of permanent custody to the Stark County Department of Job and Family Services.
 {¶ 44} Upon review, we find that the trial court had clear and convincing evidence before it to grant the Stark County Department of Job and Family Services permanent custody of the children.
 {¶ 45} Accordingly, based upon the foregoing reasons, Appellant's Assignments of Error are overruled.
 {¶ 46} The judgment of the Stark County Court of Common Pleas, Juvenile Court Division, is affirmed.
Boggins, J. Wise, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Court Division, is affirmed.