OPINION *Page 2 
{¶ 1} Appellant Carrie Riemenschnieder appeals from the December 1, 2006, Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, which terminated appellant's parental rights and granted permanent custody of Maddix Riemenschnieder to appellee Stark County Department of Job and Family Services. [Hereinafter "SCDJFS"].
 STATEMENT OF FACTS AND THE CASE {¶ 2} Appellant, Carrie Riemenschnieder, is the mother of Maddixx Riemenschnieder, born on July 19, 2005. The father of this child is Brett Bricker. The SCDJFS became involved with both parents in July of 2005. Following a finding of abuse and an award of temporary custody to the SCDJFS on October 13, 2005, a case plan was developed for both parents with reunification as its goal. Concerns centered on substance abuse and the ability of both parents to cope with life stressors. Appellant was ordered to undergo a psychological evaluation through Northeast Ohio Behavioral Health ("NEOBH") and to follow all recommendations. Appellant did complete the evaluation, but had not yet complied with all recommendations, including Goodwill Parenting, Quest, stable housing and consistent employment. The child's father did not appear or participate in the case plan. Consequently, the stated goal of the case plan was amended from reunification to adoption, and the SCDJFS filed a Motion for Permanent Custody on June 13, 2006.
 {¶ 3} An initial hearing regarding whether the child could or should be placed with either parent within a reasonable time was held on July 13, 2006. A hearing regarding the right of the maternal great-grandparents to intervene was held on October *Page 3 
16, 2006. The trial court overruled the motion to intervene. Thereafter, a Motion for Change of Legal Custody to the maternal great-grandparents was filed on behalf of Appellant on October 23, 2006. The final hearing regarding the best interests of the child was held on October 30, 2006. The trial court concluded that Appellant had failed to remedy the problems that led to removal of the child and was unlikely to do so in the near future. The trial court further found that the child had been abandoned and that no suitable member of the child's extended family was available to accept legal custody of the child. Although the maternal great-grandparents had once maintained placement of the child, and despite any finding that the maternal great-grandparents were inappropriate or unfit, the trial court determined by clear and convincing evidence that it would not be in the best interest of the child for a change of legal custody to be granted. Based on the foregoing, the trial court terminated Appellant's parental rights and granted permanent custody to the SCDJFS on December 1, 2006.
 {¶ 4} Mother timely filed a notice of appeal raising the following assignment of error:
 {¶ 5} "I. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF MADDIXX RIEMENSCHNIEDER TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES BECAUSE ITS FINDING THAT IT WAS NOT IN THE BEST INTERESTS OF THE CHILD FOR LEGAL CUSTODY TO BE GRANTED TO HIS MATERNAL GREAT-GRANDPARENTS WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE." *Page 4 
 I. {¶ 6} R.C. 2151.414(B) (1) establishes the test for a juvenile court to apply in ruling on a motion by a public children services agency for permanent custody of a child. The statute provides:
 {¶ 7} "[T]he court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 8} "(a) * * * [T]he child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 9} "(b) The child is abandoned.
 {¶ 10} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 11} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 12} SCDJFS based its motion for permanent custody specifically on the element contained in R.C. 2151.414(B) (1) (a). Thus, in order to obtain permanent custody of Maddixx, SCDJFS had to achieve by clear and convincing evidence that (1) Maddixx could not or should not be placed with his parents and (2) that it was in Maddixx's best interest that the agency be granted permanent custody. *Page 5 
 {¶ 13} R.C. 2151.414(E) sets forth the elements necessary to satisfy an R.C. 2151.414(B) (1) (a) determination that the child cannot or should not be placed with his parents within a reasonable time:
 {¶ 14} "In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 15} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 16} "* * *
 {¶ 17} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or *Page 6 
by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 18} "* * *
 {¶ 19} "(16) Any other factor the court considers relevant."
 {¶ 20} The trial court made findings touching specifically on R.C.2151.414(E) (1) and (4). As for R.C. 2151.414(E) (1), the court found that both parents had failed to follow through with the case plan, finding that appellant "has not submitted to urine screens or drug treatment . . . failed to start Goodwill Parenting classes . . . was arrested at Court on an outstanding warrant for failure to appear for community service on a traffic offense . . . on July 19, 2006 drug tested at Court and was positive for cocaine."
 {¶ 21} As for R.C. 2151.414(E) (4), the court found that neither parent consistently attended visits.
 {¶ 22} The court thus found by clear and convincing evidence that Maddixx cannot safely be placed with either of his parents within a reasonable time. In making that significant determination, the court satisfied the requirements of R.C. 2151.414(B) (1) (a); that aspect of the juvenile court's decision is not in dispute.
 {¶ 23} The juvenile court next had to determine whether granting permanent custody to the agency was in the child's best interest. It is in that aspect of the juvenile court's decision that the appellant claims the trial court erred.
 {¶ 24} R.C. 2151.414(D) sets forth the factors a court must consider in determining the best interests of the child. That section provides: *Page 7 
 {¶ 25} "In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * *, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 26} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 27} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 28} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 29} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 30} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 31} A court must conclude by clear and convincing evidence that an assignment of permanent custody is in the best interest of the child. R.C. 2151.414(E). The standard of "clear and convincing evidence" is defined as "that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the *Page 8 
facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus;In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368, 18 OBR 419,425, 481 N.E.2d 613, 620.
 {¶ 32} Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. Ford v. Osborne (1887), 45 Ohio St. 1, 12 N.E. 526, paragraph two of the syllabus. However, it is also firmly established that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court. An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court judge. See Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276; CE. MorrisCo. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261,376 N.E.2d 578.
 {¶ 33} The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. In reSchafer, 11 Ohio St.3d 498, 2006-Ohio-5513 at ¶ 56. Schafer made it clear that a trial court's statutory duty, when determining whether it is in the best interest of a child to grant permanent custody to an agency, did not include finding by clear and convincing evidence that no suitable relative was available for placement. "The statute requires a weighing of all relevant factors, and the trial court did that in this case. R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C.2151.414(B)(1)(a) through (d). *Page 9 
The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." Schaeffer at 111 Ohio St.3d, 498,2006-Ohio-5513, at ¶ 64; In re Avon, 5th Dist. No. 2006-AP-09-0051, 2007-Ohio-1431 at ¶ 26.
 {¶ 34} The child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security.In re Adoption of Ridenour (1991), 61 Ohio St.3d 319, 324,574 N.E.2d 1055. Accordingly, a court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. In re A.C., 12th
Dist. No. CA 2006-12-105, 2007-Ohio-3350 at ¶ 17; In re Turner, 5th Dist. No. 2006CA00062, 2006-Ohio-4906 at ¶ 35; In rePerry, 4th Dist. Nos. 06 CA 648, 06 CA 649,2006-Ohio-6128 at ¶ 62.
 {¶ 35} During the permanent custody hearing, the court received testimony concerning the relative placement from Adrienne Chenault, the ongoing service worker assigned by SCDJFS, and the interested relative. Ms. Chenault testified that Maddixx was a healthy Caucasian child born on July 19, 2005. (T., October 30, 2006 at 9). The Whited's had placement of Maddixx from late July 2005 until September 2005. (Id. at 12). In August 2005, the Whited's requested Maddixx be removed from their home. (Id. at 19).
 {¶ 36} At the time of trial, another family member was being considered for placement and possible adoption of Maddixx. (T., October 30, 2006 at 16). An interstate *Page 10 
compact assessment was being completed to determine the viability of that placement. (Id. at 15).
 {¶ 37} The guardian ad litem was present for the permanent custody hearing. A written report had been submitted to the court and the parties for consideration. The Guardian made a brief statement to the court and rested upon her written report, recommending the motion for permanent custody be granted. (T., October 30, 2006 at 50-51). The Guardian recommended permanent custody be granted based upon Ms. Whited's statement that "she cannot in her (Ms. Whited's) own opinion provide long term care" for Maddixx and ". . . her waffling on her ability to provide long term for the child. (Id. at 50-51). The Guardian indicated "maternal great grandmother Mrs. Georgene Whited had said to me on several occasions that she did not know if she could provide long term care for Maddixx." (Id. at 50). No party requested the opportunity to question the guardian. (Id. at 50-51).
 {¶ 38} After determining that Maddixx could not or should not be placed with either parent within a reasonable time, the Court was required to determine the dispositional option which provided Maddixx the greatest chance for a stable and permanent home, whether it be through a grant of permanent custody leading to adoption or a change of legal custody to a family member. After receiving evidence over multiple days, the Court determined granting permanent custody was in the best interest of Maddixx and provided the best opportunity for a stable, permanent life. It can not be said the Court abused its discretion or that the weight of the evidence would lead to a clear and contrary decision. *Page 11 
 {¶ 39} In short, upon our review of the record, we find that the trial court did not err in finding that it was in the best interest of the child to be placed in permanent custody of SCDJFS, rather than to be placed with the Whited's, and did not err in terminating appellant's parental rights.
 {¶ 40} For the foregoing reasons, appellant's sole assignment of error is overruled.
Gwin, P.J., Edwards, J., and Delaney, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, appellant's sole assignment of error is overruled. Costs to appellant. *Page 1