[Cite as *In re B.S.*, 2012-Ohio-1036.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

B.S. AND S.S.

JUDGES:
Hon. Patricia A. Delaney, P.J.
Hon. William B. Hoffman, J.
Hon. Sheila G. Farmer, J.

Case No. 11AP100041


O P I N I O N



| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Tuscarawas County Court of Common Pleas, Juvnile Division Case No. 10 JN 00161 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | March 13, 2012 |

APPEARANCES:

For Appellant/Mother

SHARON BUCKLEY-MIRHAIDARI
152 N. Broadway Ave., Suite 200
New Philadelphia, Ohio 44663


For Appellee, Tuscarawas
County Job and Family Services

DAVID HAVERFIELD
389 16th Street, S.W.
New Philadelphia, Ohio 44663

For Father

JEFFREY GINSBURG
P.O. Box 250
Millersburg, Ohio 44654


Guardian Ad Litem


KAREN DUMMERMUTH
349 East High Avenue
Box 494
New Philadelphia, Ohio 44663

*Hoffman, J.*

{¶1}   Appellant Charity Schenker ("Mother") appeals the September 26, 2011 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which terminated her parental rights, privileges and obligations with respect to her two minor children and granted permanent custody of the children to Appellee Tuscarawas County Job and Family Services ("TCJFS").

STATEMENT OF THE CASE AND FACTS

{¶2}   On April 12, 2010, TCJFS filed a Complaint, alleging B.S. (dob 11/22/05) and S.S. (dob 9/22/09) were neglected and dependent.  Mother and Brock Schenker are the biological parents of the two girls.[1]  TCJFS became involved after Mother dismissed a protection order she had sought against Father based upon threats of harm by Father as well as domestic violence.  At the adjudicatory hearing on June 11, 2010, Mother and Father stipulated the children were neglected and dependent.  The trial court approved and adopted a case plan for both parents.  The children remained in the temporary custody of TCJFS with parents being granted supervised visitation.  TCJFS suspended Mother's visits following her first visit as Mother engaged in disruptive conduct and left the visitation room and the agency inexplicably.  The trial court reinstated her visits, but suspended such again in April, 2011, after Mother repeatedly tested positive for illegal drugs.  Following the suspension of her visit in April, 2011, Mother did not see the children and did not have any contact with TCJFS or the trial court.

---

[1] Father is not a party to this appeal.

{¶3} On March 1, 2011, TCJFS filed a motion seeking permanent custody of B.S. and S.S. The trial court conducted a hearing on the motion on August 11, 2011.

{¶4} At the hearing, Dr. Anita Exley, a clinical psychologist at Chrysalis Counseling Center, testified she conducted an evaluation of Mother. As a result, Dr. Exley diagnosed Mother with adjustment disorder with a histrionic personality disorder as well as narcissistic personality features. Dr. Exley recommended Mother engage in therapy to assist her in confronting her issues and to develop an ability to be more emotionally available to her daughters. Dr. Exley stated if Mother did not follow through with the recommendation of therapy, she would have concerns about reuniting the children with Mother. The doctor explained she found Mother to be self-absorbed, focused on her own issues, and placed her own needs and concerns above those of her daughters.

{¶5} Jamie Grunder, the ongoing case manager for the family, testified drug use was not a concern when the complaint was initially filed, but developed over time regarding both parents. Grunder stated the last time she saw Mother was April 4, 2011, at the hearing during which her visits with the children were suspended. Grunder indicated Mother had moved out of state and had been evicted from her last residence in April, 2011. Mother tested positive for marijuana at each meeting with Grunder. Grunder had a difficult time finding Mother, who would not show up for appointments or cancel them. Although the case plan was adopted in May, 2010, Mother did not submit to her psychological evaluation until January, 2011. Mother did not follow through with any of the recommendations. Mother completed the parenting classes. Grunder did not know if Mother had housing as she had been evicted in April. Mother never provided

Grunder of any proof of employment. Mother never completed a drug and alcohol assessment. Mother tested positive for marijuana on the day of her last court appearance in April, 2011.

{¶6} Via Judgment Entry dated September 25, 2011, the trial court terminated Mother's parental rights, privileges and responsibilities with respect to her two minor daughters and granted permanent custody of the children to TCJFS.

{¶7} It is from this judgment entry Mother appeals, raising the following assignments of error:

{¶8} "I. THE TRIAL COURT ERRED IN GRANTING JOB AND FAMILY SERVICES PERMANENT CUSTODY AS SAID DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AS REQUIRED BY O.R.C. 2151.414 AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶9} "II. THE TRIAL COURT ERRED IN GRANTING JOB AND FAMILY SERVICES PERMANENT CUSTODY WHEN APPROPRIATE RELATIVE PLACEMENT WAS AVAILABLE FOR THE CHILDREN.

{¶10} "III. THE CHILDREN WERE DENIED THEIR RIGHT TO DUE PROCESS AS GUARANTEED BY THE OHIO AND U.S. CONSTITUTIONS WHEN THEY WERE NOT APPOINTED LEGAL COUNSEL."

{¶11} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I

{¶12} In her first assignment of error, Mother contends the trial court erred in granting permanent custody of B.S. and S.S. to TCJFS as such decision was not

supported by clear and convincing evidence and was against the manifest weight of the evidence.

**{¶13}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.

**{¶14}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶15}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for

twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶16} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶17} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶18} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶19}** In the instant action, Mother argues the trial court's finding the children could not or should not be placed with her within a reasonable time is against the manifest weight of the evidence. Mother maintains the evidence established she "successfully and substantially completed all case plan requirements except for the drug and alcohol assessment." We find the record belies Mother's assertion.

**{¶20}** Some seven months after she was ordered to undergo a psychological evaluation, Mother commenced the process. There was no evidence Mother followed through with any of the recommendations. The psychologist diagnosed Mother with adjustment and histrionic personality disorders as well as narcissistic personality traits. Without Mother's engaging in therapy, Dr. Extley expressed concerns about returning the children to Mother.

**{¶21}** Mother's visitation with the children was suspended as the result of her drug use on two occasions during the pendency of the matter. Mother, however, did not complete a drug and alcohol assessment. After her visitation was suspended on April 14, 2011, Mother had no further contact with the children, TCJFS, or the trial court.

**{¶22}** There was no evidence Mother had established stable housing. In fact, the caseworker testified Mother had been evicted in April, 2011. The caseworker had been informed Mother had moved to North Carolina.

**{¶23}** Based upon the foregoing, we find the trial court's finding the children could not or should not be returned to Mother was not against the manifest weight of the evidence.

**{¶24}** Mother's first assignment of error is overruled.

II

**{¶25}** In her second assignment of error, Mother asserts the trial court erred in granting permanent custody of the children to TCJFS as there was appropriate relative placement.

**{¶26}** In *In re Schaefer,* 111 Ohio St.3d 498, 857 N.E.2d 532, 2006–Ohio–5513, the Ohio Supreme Court clearly found a trial court's statutory duty in determining whether it is in the best interest of a child to grant permanent custody to an agency does not include finding, by clear and convincing evidence, no suitable relative is available for placement. The statute requires the trial court to weigh all relevant factors. R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement which would not require a termination of parental rights an all-controlling factor nor require the court to weigh that factor more heavily than other factors. *Schaeffer* at ¶ 64.

**{¶27}** TCJFS conducted a home study on the residence of maternal grandmother, Donna Zarnick.  Such was conducted even though neither Zarnick nor Mother filed a motion with the trial court requesting Zarncik be considered for placement.  Following the home study, the case worker had concerns about placing the children with Zarnick.  The case worker noted Zarnick blamed the situation on Father and the court system.  Zarncik believed Mother should be able to parent her daughters. The case worker indicated Zarnick was uncooperative and difficult during the home study process.  The case worker expressed concerns regarding the physical condition of Zarnick's home.

**{¶28}** We find no error in the trial court's decision not to place B.S. and S.S. with their maternal grandmother.

**{¶29}** Mother's second assignment of error is overruled.

III

**{¶30}** In her final assignment of error, Mother submits the trial court denied the children their right to due process by failing to appoint legal counsel for the children as the children's wishes conflicted with the guardian ad litem's recommendation.

**{¶31}** In *In re Williams* (2004), 101 Ohio St.3d 398, 805 N.E.2d 1110, 2004–Ohio–1500, the Ohio Supreme Court held a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and is entitled to independent counsel under certain circumstances. "[C]ourts should make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child." *Id.* at ¶ 17.

**{¶32}** The *Williams* court did not explain what circumstances might trigger the juvenile court's duty to appoint counsel. See, *In re A.T.,* Summit App. No. 23065, 2006–Ohio–3919 at ¶ 57; *In re Wylie,* 2d Dist. No.2004CA0054, 2004–Ohio–7243, at ¶ 70. The facts of *Williams* indicate the child whose custody was at issue was four years of age at the time he was initially placed in the temporary custody of the child protective agency. *Williams* at ¶ 2. He was subsequently returned to his mother, removed again, and was six years of age at the time the permanent custody hearing was conducted. *Id.* at ¶ 4. The child was represented by a guardian ad litem, who was an attorney, but was not appointed to represent the child in a dual capacity. *In re Williams,* 11th Dist. Nos.

2002–G2454, 2002–G–2459, 2002–Ohio–6588, at ¶ 20. The child was said to have "repeatedly expressed a desire to remain with his mother," and the guardian ad litem recommended that permanent custody be granted to the agency. *Williams,* 2004–Ohio–1500, at ¶ 5.

**{¶33}** The *Williams* Court emphasized the child expressed his wish for reunification "often," "consistently," and "repeatedly." *Williams,* 2002–Ohio–6588, at ¶ 17, ¶ 20, and ¶ 9. He "often did not want to let appellant out of his sight." *Id.* at ¶ 9. Significantly, the appellate court recognized "there is no need to consider the appointment of counsel based upon a child's *occasional* expression of a wish to be with a parent or because of a statement made by an immature child." (Emphasis added.) *Id.* at ¶ 24; *In re A. T.,* supra.

**{¶34}** In the case at bar, the only evidence to which Mother cites in support of her position the trial court should have appointed separate legal counsel for B.S. and S.S. was a letter from Gail Weisend, B.S.'s counselor, to the case worker, in which Weisend stated B.S. was grieving the loss of Father "especially", and wanted to go home. B.S. never expressed any wishes directly to the case worker.

**{¶35}** Although the specific wishes of the child/children are a statutory factor the trial court may consider in making a best interest determination, such consideration must be made "with due regard for the maturity of the child". R.C. 2151.414(B)(1)(b). B.S. was five years of age at the time.

**{¶36}** We find the counselor's general expression of the girl's emotions does not equate to the child's ability to make a knowing choice to remain with one parent. The counselor also noted B.S. was open to being loved by another mother and father. We

find the counselor's letter does not create a conflict with the recommendation for permanent custody by a guardian ad litem as to warrant the appointment of separate legal counsel for the children.

{¶37} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.

By: Hoffman, J.

Delaney, P.J.  and

Farmer, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ Patricia A. Delaney_____
HON. PATRICIA A. DELANEY


s/ Sheila G. Farmer_____
HON. SHEILA G. FARMER

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:                         :
                                          :
B.S. AND S.S.                             :
                                          :
                                          :          JUDGMENT ENTRY
                                          :
                                          :
                                          :          Case No. 11AP100041

For the reasons stated in our accompanying Opinion, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed. Costs to appellant.

s/ William B. Hoffman _____
HON. WILLIAM B. HOFFMAN


s/ Patricia A. Delaney_____
HON. PATRICIA A. DELANEY


s/ Sheila G. Farmer_____
HON. SHEILA G. FARMER