[Cite as *In re J.S.R.*, 2022-Ohio-482.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF : | : | JUDGES: |
| J.S.R (7-11-2013) | : | Hon. W. Scott Gwin, P.J. |
| MINOR CHILD | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | Case No. 2021 AP 10 0027 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Tuscarawas County
                                  Court of Common Pleas, Juvenile
                                  Division, Case No. 20 JN 00043

JUDGMENT:                         Affirmed

DATE OF JUDGMENT:                 February 18, 2022

APPEARANCES:

For Plaintiff-Appellant                    For Defendant-Appellee

NICHOLAS A. DOUGHTY                        LISA VITALE ARNOLD
401 Tuscarawas St. W., Suite 201           Tuscarawas County Job and Family Services
Canton, Ohio 44702                         389 16th St. S.W.
                                           New Philadelphia, Ohio 44663
MARY G. WARLOP
Guardian ad Litem                          For Minor Children
116 Cleveland Ave. NW, Ste 500
Canton, Ohio 44702                         TARA WRIGHT-TIMBERLAKE
                                           112 South Wooster Ave.
For Father Tyson Fisher                    Strasburg, Ohio 44680

ERICK L. BAUER                             For Mother
122 North Broadway
New Philadelphia, Ohio 44622               JOHN GARTRELL
                                           Assistant Public Defender
                                           P.O. Box 1026
                                           New Philadelphia, Ohio 44663

*Baldwin, J.*

**{¶1}** Appellant, Dennis Anderson, father of J.R., appeals the decision of the Tuscarawas Court of Common Pleas, Juvenile Division, granting the motion for permanent custody filed by appellee, Tuscarawas County Job and Family Services.

### STATEMENT OF FACTS AND THE CASE

**{¶2}** Anderson asks that this court reverse the decision of the trial court, not because he is entitled to custody of his son or that he needs additional time to complete a case plan. He contends that the grant of permanent custody should be reversed only because a relative, Joseph McNutt was available for placement of the child.

**{¶3}** The mother of J.R. did not appeal the grant of permanent custody and the father, Appellant Anderson, has been incarcerated since the opening of this case in January 2020 with an anticipated release date in 2029. Neither is seeking custody of J.R., so the facts surrounding the placement of the children in the custody of appellee and the parent's response to the case plan approved by the court are not relevant to the resolution of the issue before the court. Anderson contends that "the testimony given at the dispositional hearing did not provide clear and convincing evidence to conclude that permanent custody was in the best interest of Child when a relative placement was available for Child." (Appellant's Brief, p.3.) He limits his argument to the issue of relative placement, contending that the child's maternal great uncle, Joseph McNutt, was willing and able to accept custody of J.R.

**{¶4}** Tuscarawas Job and Family Services (TCJFS) did complete home investigations of two potential relatives interested in placement. The home of an aunt in Texas was found unsuitable by local authorities due to the uncle's PTSD and "something about dog vaccines not being up to date." (Transcript, p. 28, lines 16-19). TCJFS then

considered the home of Norma McNutt, great grandmother of J.R. and mother of Joseph McNutt.  This placement was rejected due to the health of Norma McNutt, the frequent alcohol consumption of Charles McNutt, an uncle to J.R. who resides in Ms. McNutt's home, and prior OVI and domestic violence convictions of Joseph McNutt, the third resident in the home.  Further, Sherry King, maternal grandmother of J.R., visits the home of Norma McNutt and previously assisted in Ms. McNutt's care.  Ms. King served time in prison for permitting J.R.'s mother to be sexually abused as a child, the same fact pattern that supported removing the children from their mother at the outset of this case.

{¶5}    J.R.'s mother requested that a home study for Joseph McNutt be completed and the court rejected the request, noting that a home study had been completed and the home found not suitable. (Judgment Entry, Apr. 5, 2021, Docket # 64, p. 1) While that investigation involved a placement with Norma McNutt, placement with Joseph McNutt in the same home would be subject to the same concerns. (Transcript, p. 29, line 4 to p. 30, line 6).

{¶6}    The motion for permanent custody of J.R. came on for hearing on September 28, 2021.  The TCJFS social worker responsible for the case testified that the mother of J.R. did not remedy the concerns that led to the removal of J.R. from the home. She also testified that Anderson, father of J.R. was not on the case plan because he was "incarcerated in the Belmont County Correctional Institute for two counts of rape and gross sexual imposition. He was sentenced on 1/12/2018, and projected release date is 2029." (Transcript, p. 23, lines 10-12).

{¶7}    Joseph McNutt was called as a witness by Anderson. McNutt lives with his 84 year old mother, Norma McNutt, and his 56 year old brother, Charles McNutt, in a three bedroom home.  McNutt is disabled as a result of open heart surgeries, but he still

manages to do all the cooking and cleaning and care for his mother, who suffers from dementia and cannot be alone. His younger brother, Charles, is employed as a forklift operator and keeps to himself. Charles drinks four to five beers every night in his bedroom to go to sleep.

{¶8} McNutt admitted to a twenty-one year old charge of domestic violence that he believes was dropped and an OVI in 2002. He claimed he no longer uses drugs and does not drink alcohol.

{¶9} He described visits with J.R., both before the dependency case was filed and afterward, while J.R. was in the custody of TCJFS. He visited J.R. five or six times after J.R. was placed in custody and was pleased with the change he saw in J.R.'s behavior as compared to before they were taken into custody by TCJFS. When asked why he wanted J.R. placed in his home, he answered:

> Q. Okay, and why do you want Jordan placed in your home?
>
> A. He's family. Why wouldn't I want him placed in my home?
>
> Q. But, besides that, you have to explain to the Court why?
>
> A. I mean, just because he's family is not enough of a reason?

Transcript, p. 59, lines 3-6.

{¶10} On cross examination, McNutt confirmed that he had not filed a motion for custody, but that "he would like to have custody of this child if possible." (Transcript, p. 63, line 16). He acknowledged that the children's[1] behavior had concerned him, and that he knew that the mother's paramour was a sex offender, but felt that talking with her would not have made a difference. He admitted that he did not seek custody of the

---

[1] J.R.'s sibling, child of a different father, was involved in the case, but was not part of this appeal.

children despite his concerns about the environment in the home and offered that he was recovering from heart surgery at that time.

{¶11} The trial court found that J.R. had been in the temporary custody of TCJFS for sixteen of the last twenty-two months and that neither parent would be available to care for the child in the near future.  The trial court then held that the grant of permanent custody was in the best interest of J.R. and granted the motion.

{¶12} Anderson filed a notice of appeal and submitted one assignment of error:

{¶13} "I. THE TRIAL COURT'S FINDING THAT PERMANENT CUSTODY WAS IN THE MINOR CHILD'S BEST INTERESTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**STANDARD OF REVIEW**

{¶14} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact-finder could base its judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA-5758, 1982 WL 2911 (February 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶15} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction

[decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also*, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 2.

## ANALYSIS

**{¶16}** Anderson claims that the trial court's finding that the grant of permanent custody to TCJFS was in the best interest of J.R. was against the manifest weight of the evidence.   In support of his argument, he offers the fact that his uncle, Joseph McNutt was willing to serve as a relative placement for J.R.  In his brief, he concluded that "Joseph McNutt was willing and able to provide the care for Child, obviating the need for a permanent custody award." (Appellant's Brief, p.4).  McNutt did not file a motion for legal custody of J.R.  (Transcript, p. 63) and did not clearly state a request that J.R. be placed in his home.  When asked "* * * what do you think this Court should do today?" He did not respond that J.R. should be placed with him, but instead stated "* * * I prayed about this, and whatever God's will is, is the way it's going to be when I leave here today anyway, and I will accept that." (Transcript, pages 61-62).

**{¶17}** While McNutt's offer to serve as legal custodian is laudable and we applaud his willingness to accept responsibility for a young child despite his disability and the already heavy burden of caring for his elderly mother, his availability as a relative placement does not serve as bar to a grant of permanent custody. The Supreme Court of Ohio as well as this court have addressed this issue and found that Anderson's allegation that a suitable relative placement undermines the trial court's finding that permanent custody is in the best interest of J. R.  is not supported by the Revised Code.

**{¶18}** When considering the obligations of the trial court with regard to the best interest of a child in the context of a permanent custody hearing, the Supreme Court of Ohio held:

That duty did not include the requirement imposed by the appellate court that the juvenile court determine by clear and convincing evidence that "termination of appellant's parental rights was not only a necessary option, but also the only option." Nor did that duty include the requirement that the juvenile court find by clear and convincing evidence that no suitable relative was available for placement. The statute requires a weighing of all the relevant factors, and the trial court did that in this case. R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors.

*In re Schaefer,* 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 64.

**{¶19}** This court reached the same conclusion when we held that "[a]ccordingly, a court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. (Citations omitted.) *In re Riemenschnieder,* 5th Dist. Stark No. 2006-CA-00390, 2007-Ohio-5051, ¶ 4.  And this court has followed the holding of *In re Schaefer, supra* in *In re B.S.*, 5th Dist. Tuscarawas No. 11AP100041, 2012-Ohio-1036, ¶¶ 25-29.

**{¶20}** The record does reflect that a home study was conducted at McNutt's residence and rejected, and although that home study addressed a potential placement

with Norma McNutt, J.R.'s great grandmother, the trial court concluded that a further home study regarding Joseph McNutt, who lived at the same residence would be unnecessary.  On April 5, 2021, the trial court concluded "TCJFS has already conducted a home study for that residence and found the home to be inappropriate for the placement of children." (Judgment Entry, Apr. 5, 2021, p. 1). No appeal has been taken from that order.

{¶21} Joseph McNutt has acknowledged that J.R. is doing well at this current placement and has admitted that he suffered from a disability that limits his mobility.  He is caring for an elderly mother who suffers from dementia and apparently receives little or no assistance from his brother though he lives in the same home.  McNutt was aware that J.R. was living in a home where something was wrong and was disturbed by J.R.'s behavior. (Transcript, p. 58, lines 8-14). He visited J.R. when he was placed in temporary custody, but had not offered to serve as custodian until the issue of permanent custody was brought before the court. TCJFS conducted a home study at McNutt's residence and found the home unsuitable and the guardian ad litem, aware of all the facts and pleadings, concluded that "permanent custody is the best option for [J.R.] at this time." (Transcript, p. 41, lines 17-18).

{¶22} While we do not question McNutt's sincerity, we believe that these facts support the trial court's finding that permanent custody was in J.R.'s best interest.

{¶23} Anderson asserts that McNutt's availability as a relative placement should be given greater weight in the analysis of J.R.'s best interest and that the trial court's decision is against the manifest weight of the evidence.  Revised Code section 2151.414 and the holding of *In re Schaefer* directly refute his argument. J.R.'s interaction and interrelationship with McNutt is not entitled to any greater weight than the other relevant

evidence. The trial court considered all the relevant factors in R.C. 2151. 414 and found that it was in the best interest of J.R. to be placed in the permanent custody of TCJFS. The record provides support for that finding. The representative from TCJFS testified that permanent custody was the least restrictive means to provide J.R. a legally secure placement and the only way to achieve that placement. The guardian ad litem relayed that J.R. wished to be adopted and was hopeful that his current relationship with a potential adoptive family would become permanent. She testified that permanent custody would be best option for him at this time and that other options presented by the parents were not safe or appropriate.

{¶24} Considering the entire record, we find that the trial court did not lose its way, did not create a manifest miscarriage of justice and did not abuse its discretion by failing to place J.R. with Joseph McNutt and granting permanent custody to TCJFS.

{¶25} Anderson's assignment of error is overruled and the decision of the Tuscarawas County Common Pleas Court, Juvenile Division is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Wise, John, J. concur.